

BHW

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (1) THE APPLE IPHONE ASSIGNED PHONE NUMBER 443-854-2804 AND (2) GOOGLE, INC. GMAIL EMAIL ACCOUNT ILOVEGUCCI88@GMAIL.COM | 18 - 0 9 4 2 JMC<br><br>Case No.  18 - 0 9 4 3 JMC |

SCANNED

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent John M. Krajnak, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant to search the following mobile device: Apple iPhone assigned phone number 443-854-2804 and any attached SIM or memory card, (hereinafter the "**Device**"); and the following email account: Google Gmail account ILOVEGUCCI88@GMAIL.COM (hereinafter the "**Account**"), both believed to have been used by JAMES ATKINSON.

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since November 2005. During my employment as an FBI Special Agent, I have been assigned to investigate violations of federal law including violent crime, organized crime, counterterrorism, and counterintelligence. I have received training and gained experience in interviewing and interrogations techniques, arrest procedures, search warrant applications, the execution of searches and seizures, communications platforms, computer networks, and various other criminal investigative procedures. I am currently assigned to the Baltimore Violent Crimes Task Force in Baltimore, Maryland. In that capacity, I have investigated numerous cases involving Hobbs Act Robbery.

3. The facts in this affidavit come from information obtained from other agents and law enforcement officers, witnesses, my knowledge, training, and experience, and personal observations. This affidavit is intended to show there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have not omitted any information that would defeat a finding of probable cause.

4. The applied for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described therein by members of the FBI, or their authorized representatives, including by not limited to other law enforcement agents assisting in the above-described investigation. The applied for warrant would further authorize the search of the Account.

5. Based on my knowledge, training, and experience and the facts set forth in this affidavit, there is probable cause to believe that evidence, fruits and instrumentalities of violations of Title 18 U.S.C. § 1951, interference with commerce by threats or violence and Title 18 § U.S.C. 924(c) possession of a firearm in furtherance of a crime of violence have been committed by JAMES ATKINSON. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of these crimes are located within the Device and the Account.

**PROBABLE CAUSE**

6. The FBI Baltimore Division Violent Crimes Task Force and the Baltimore Police Department Citywide Robbery Unit are conducting a joint investigation into a commercial armed robbery and carjacking that occurred in Baltimore, Maryland on February 23, 2018.

7. On Friday, February 23, 2018 at approximately 6:16 P.M., members of the Baltimore Police Department (BPD) responded to a call for a commercial armed robbery at Auto Budget, LLC, 4127 Sunnyside Avenue, Baltimore, Maryland 21215, a car rental and auto sales business engaged in interstate commerce. The victim employee told officers he was sitting at the front desk of the business when an unidentified black male subject entered the location. The subject sat down and asked the victim employee if he could get the deposit back for his wife's vehicle rental.

8. The subject provided the name of Paula Marie Gurley, date of birth October 4, 1983, as his wife. The victim employee looked up the rental associated with Gurley and saw the rental car had been returned with damage. The victim employee advised the subject the deposit would not be returned until Gurley paid for the necessary repairs. The subject then asked the victim employee if he had any available vehicles to rent. The victim advised the subject there were no vehicles available to rent at the moment. The victim asked the subject to leave because he was closing up for the night. At that time the subject stood up and pointed a black revolver at the victim employee and demanded money.

9. The victim employee told the subject there was money in the top drawer of his desk. The victim then provided U.S. Currency from his wallet to the subject. The subject ordered the victim employee to the ground. The subject then removed U.S. Currency from the top desk drawer. The subject asked the victim where the DVR box for the camera system was located and the victim pointed to it. The subject went over to the DVR box but did not take it. The subject then took the victim's wallet and phone.

10. The subject demanded a car from the victim. The victim told the subject there were car keys on a desk in the back room. The subject went to the back room and took the keys

to a black 2010 Hyundai Elantra. The subject then produced an electronic stun gun and attempted to shock the victim on the arm while the victim was kneeling on the floor. The victim pleaded for his safety.

11. The subject then ordered the victim into the adjacent room. The victim walked into the next room and then ran up the stairs. The subject left the office and departed in the black 2010 Hyundai Elantra in an unknown direction. The victim then ran downstairs, called 911, and began to cancel his credit cards that were in his stolen wallet.

12. Subsequent investigation determined two unauthorized attempts to use a credit card and debit card stolen from the victim. One attempt was on Walmart.com and the other was for Boost Mobile. A delivery address of 3312 Dorithan Road, Baltimore, Maryland 21215, phone number of 443-422-6118, and email address ILOVEGUCCI88@GMAIL.COM was entered on the Walmart.com order.

13. The documented renter of the vehicle reference by the subject was determined to be Paula Marie Gurley, date of birth October 4, 1983 based on records from the victim business. The victim employee advised and showed pictures of the rented car returned with damage consistent with bullet holes.

14. Gurley was subsequently located and interviewed by investigators. Gurley advised the following in summary. On February 2, 2018, Gurley used her idenfication to rent a vehicle for a black male she knows as "Breezi." Gurley had purchased CDS from "Breezi" on a few occasions. Gurley rented the car and "Breezi" gave her money for it. Gurley was notified that the car had not been returned at some point after she gave it to "Breezi." She texted him to tell him to return it. The vehicle was returned to Auto Budget, LLC on February 13, 2018. Soon thereafter, an Auto Budget, LLC employee contacted Gurley and told her she needed to pay for

the damage to the car. The employee sent Gurley pictures of damage to the car which looked like bullet holes.

15. Gurley described "Breezi" as a black male, approximately 200 pounds, medium/dark complexion, some facial hair, low hair cut, possibly in his 30s, approximately 5'9" to 5'10." Gurley provided a phone number of 443-854-2804 for "Breezi."

16. The phone number was investigated through Baltimore Police Department databases and open source databases to include CLEAR. Responsive records indicated an association between 443-854-2804 and the name James Atkinson and the address 3312 Dorithan Road, 1st Floor Apartment, Baltimore, Maryland 21215. This address was the same address entered in the attempted Walmart.com order using the victim employee's stolen credit card. An additional phone number was determined to be associated with James Atkinson through database checks. This number was 443-422-6118, which also had been used as the contact number in the attempted Walmart.com order.

17. Investigators conducted law enforcement database checks on the name James Atkinson and determined a James Edward Atkinson, a/k/a Tayshawn Prince, date of birth December 31, 1989, Maryland SID# 3225532. The photo and description were consistent with the victim employee's description of the subject and Gurley's description of "Breezi."

18. A photograph of James Atkinson, a/k/a Tayshawn Prince, was shown to Gurley without name or date of birth information. Gurley positively identified the person in the photograph as "Breezi," the person for whom she rented the car from Auto Budget, LLC.

19. Investigators showed a photographic array to the victim employee. The photographic array consisted of six photographs, which included a photograph of James

Atkinson. The victim positively identified the photograph of Atkinson as the individual who robbed him, the business, assaulted him, and took the vehicle.

20. A State of Maryland arrest warrant was obtained for James Atkinson e and a State of Maryland search and seizure warrant was obtained for 3312 Dorithan Road, Apartment 1, Baltimore, Maryland 21215.

21. On March 13, 2018, members of the Regional Warrant Apprehension Task Force (WATF) located and arrested Atkinson at his residence, 3312 Dorithan Road, 1st Floor, Baltimore, Maryland 21215. BPD Citywide Robbery detectives responded to the aforementioned location after the arrest and executed a state search and seizure warrant at 3312 Dorithan Road, Apartment 1, Baltimore, Maryland. During the search, the Device, an Apple iPhone, was located in the residence. Investigators called the number 443-854-2804 and observed the Device ring. Atkinson's girlfriend, Jermilla Burnside, was present at the residence and stated that the Device as belonged to her. Burnside retained possession of the Device. No additional iPhones or other cellular devices with T-Mobile service were located in the residence.

22. Investigators interviewed Atkinson at the Baltimore Police Department Citywide Robbery Unit. Atkinson was advised of and waived his Miranda rights. During the course of the interview, Atkinston advised the cell phone in his residence at 3312 Dorithan Road, 1st Floor, Baltimore, Maryland was his, it had service from T-Mobile, and that he pays the bills for it. He further advised that his girlfriend, Burnside, does not have a cell phone. Since his arrest, Atkinson has remained in custody.

23. Investigators reviewed jail calls made by Atkinson immediately after his transport to Central Booking. Atkinson contacted a number unknown to investigators and directed the other call participant, in effect, to tell someone else to get rid of an email address. Your affiant

believes this is a reference to the email address, ILOVEGUCCI88@GMAIL.COM, used in the attempted purchase with the victim's credit card. Based on my training and experience, I know that even when email accounts are deleted, email providers like Google will maintain data related to those email address on their servers for a period of time. On March 30, 2018, a letter was sent to Google instructing it to preserve all records related to the email address ILOVEGUCCI88@gmail.com

24. Based on my knowledge, training, and experience, I know that individuals involved with robbery and carjacking frequently use cellular telephones, communications devices, and other electronic media storage to further their illegal activities. Based upon your affiant's knowledge, training, and experience, and participation in this and other carjacking investigations, I know the following:

a. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. Cell phones have both digital storage capacity and digital camera capabilities.

b. Individuals involved in robbery and carjacking often use digital storage devices to maintain telephone number and mobile messaging "contact lists" of individuals who may have assisted in the planning of this and other criminal activity and sometimes take photographs of themselves and/or co-conspirators.

c. Individuals who possess or own handguns or other weapons frequently photograph themselves holding the handguns or other weapons.

d. Photographs on a suspect's digital device sometimes show the suspects handling proceeds or other property taken during robberies.

18 - 0 9 4 2 JMC    18 - 0 9 4 3 JMC

 e. Individuals who engage in robbery and carjacking often use cellular telephones to communicate with co-conspirators via phone calls, text messages, and mobile messaging applications.

 f. Cell phones often record the phone's historical location data.

25. Based on my knowledge, training, and experience, I know that Google, Inc. provides a variety of online services, including email access, to the public. Google, Inc. allows subscribers to obtain email accounts at the domain name "gmail.com", like the Account. Subscribers obtain an account by registering with Google, Inc. During the registration process, Google, Inc. asks subscribers to provide basic personal information. Therefore, the computers and data storage infrastructure of Google, Inc. are likely to contain stored electronic communications (including retrieved and unretrieved email for Google, Inc. subscribers) and information concerning subscribers and their use of Google, Inc. services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

26. A Google, Inc. subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google, Inc. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

27. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such

information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and sources of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account user or user(s). Based on my training and experience, I know that even if subscribers insert false information to conceal their identity, I know this information often provides indications of their true identity, location, or illicit activities.

28. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-ins (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the providers website or using a mobile application from a mobile device), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computer or other devices were used to access the email account.

29. As explained herein, information stored in connection with an email account may provide evidence of the criminal conduct under investigation. The information stored in connection with this email account can indicate who has used or controlled the account. Stored electronic data may include records of communication directly related to the crime and reveal the identities of the subject(s) involved in this investigation as well as their location(s).

30. Thus, I believe that the fruits and instrumentalities of the commercial armed robbery on February 23, 2018 will be found on the Device and in the Account.

## CONCLUSION

Based on my knowledge, training, and experience and the facts set forth above, I respectfully submit there is probable cause to believe that Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 and possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) were committed by JAMES ATKINSON a/k/a TAYSHAWN PRINCE. I further believe there is probable cause to believe that evidence, fruits, and instrumentalities of the foregoing crimes are presently located within the Device and the Account.

I respectfully request that the Court issue a warrant authorizing members of the FBI, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to search (1) the Device, as described in Attachment A, for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B, and (2) the Account, as described in Attachment C, for the purpose of seizing the items described in Attachment D.

FILED ENTERED
LOGGED RECEIVED

MAY 07 2018

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Respectfully submitted,

John M. Krajnak
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me this ___ day of April, 2018

Honorable J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

10